IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ROBERT L. SATCHER JR.,

                Plaintiff,

     v.

ED WALL, SECRETARY OF DOC,
PAUL WESTERHAUS-DIRECTOR
OF WISC. DEPT. OF JUVENILE CORR.,
JOHN OURADA, SUPERINTENDENT
OF LINCOLN HILLS SCHOOL, BRUCE
SUNDE, LHS SECURITY DIRECTOR,
DUSTIN MEURIER, SHAWN MERKEL,
MARY JO CHIZEK, UNGERER, WEYER,
WHITE, and JOHN DOE,

                Defendants.

**OPINION and ORDER**

Case No.  20-cv-365-wmc

---

*Pro se* plaintiff Robert L. Satcher, who is currently in the custody of the Wisconsin Juvenile Corrections in Green Bay Correctional Institution ("GBCI"), filed this lawsuit pursuant to 42 U.S.C. § 1983, bringing claims that staff at the Lincoln Hills School assaulted and physically abused him, and then failed to provide him medical care.  His amended complaint (dkt. #9) is ready for screening as required by 28 U.S.C. § 1915A.  For the reasons that follow, the court will grant Satcher leave to proceed on Fourteenth Amendment excessive force claims against some of the named defendants.  The court, however, will deny Satcher leave to proceed on Fourteenth Amendment medical care claims, but the denial will be without prejudice to his ability to amend his complaint to include omitted details about his need for medical attention and the manner in which the proposed defendants responded to that need.

ALLEGATIONS OF FACT[1]

In July of 2014, plaintiff Robert Satcher was a detained juvenile at the Lincoln Hills School, in Irma, Wisconsin. Satcher identifies eleven defendants: Edward Wall, then the Secretary of the Wisconsin Department of Corrections ("DOC"); Paul Westerhaus, then Wisconsin's Director of Juvenile Corrections; John Ourada, then the Superintendent at Lincoln Hills' Superintendent; Bruce Sunde, Lincoln Hills' Security Director at the time; Dustin Meurier and Ungerer, Security Supervisors at Lincoln Hills; and Shawn Merkel, Mary Jo Chizek, White, Weyer and John Doe, Youth Counselors at Lincoln Hills at the time.

On July 28, 2014, Satcher was involved in a physical altercation with another detainee at Lincoln Hills. Chizek attempted to stop the fight by putting Satcher in a "naked choke[] hold" and continuing to apply pressure to his neck, holding Satcher in that manner even after Satcher yelled that he suffers from asthma and could not breathe. Weyer then came to assist Chizek, and Satcher alleges that he repeatedly kneed Satcher in the ribs until he was breathless and in excruciating pain. Meunier, Ungerer, White and Merkel arrived at the living unit, and Chizek told them that Satcher "jumped on a white boy," and that Satcher was resisting her. Meunier then placed Satcher in Ungerer's van, ramming Satcher's forehead into the side of the door in the process. Satcher was taken to the Krueger living unit (segregation) and was asked to strip naked, at which point Merkel, Ungerer and White started punching him, causing severe pain. Even after Satcher told

---

[1] For screening purposes, the court assumes the following facts based on the allegations in plaintiff's amended complaint, resolving ambiguities and drawing all reasonable inferences in plaintiff's favor. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

them he had asthma, they continued to punch him.  According to Satcher, he waited for a nurse to visit and attend to his injuries, but nobody showed up.  Although he asked defendant Doe when he could see a nurse, and Doe replied that he would be seen, Satcher never received any medical attention.

Satcher alleges that defendants Wall, Westerhaus, Ourada and Sunde failed to take any steps to improve the conditions at Lincoln Hills known to pose substantial risk of serious harm and injuries to the detainees.


OPINION

Plaintiff seeks to proceed on Fourteenth Amendment claims against each of the defendants.  Before delving into whether he may proceed on these claims, however, the court must dismiss several defendants for lack of personal involvement.  *Backes v. Vill. of Peoria Heights, Ill.*, 662 F.3d 866, 869 (7th Cir. 2011) (recognizing the "well-established principle of law that a defendant must have been 'personally responsible' for the deprivation of the right at the root of a § 1983 claim for that claim to succeed.").  While plaintiff claims that Wall, Westerhaus, Ourada and Sunde failed to improve the conditions at Lincoln Hills that would have prevented his injuries, he has not included any allegations suggesting that any of these defendants was involved in the events described above or knew that Lincoln Hills staff had a practice of using excessive force on detainees at that specific time.  Moreover, actions under § 1983 cannot proceed against individuals solely by virtue as their roles as supervisors; to be liable, the supervisor must have "directed the conduct causing the constitutional violation, or . . . it occurred with [his] knowledge or consent."

*Sanville v. McCaughtry*, 266 F.3d 724, 739-40 (7th Cir. 2001).  Since plaintiff has not alleged that Wall, Westerhaus, Ourada or Sunde actually directed the conduct resulting in plaintiff's assault and lack of medical care, or they knew these events were occurring and allowed them to proceed, these defendants will be dismissed without further discussion.

## I.   Constitutional claims

Plaintiff seeks to proceed on two types of constitutional claims:  excessive force and deliberate indifference to serious medical needs.  Plaintiff properly invokes the Fourteenth Amendment, since he was a juvenile detainee rather than a *convicted* prisoner at that time. Indeed, since an adjudication of juvenile delinquency is "not a conviction of a crime," *see* Wis. Stat. § 938.35(1), and the Wisconsin juvenile system does not involve the same procedural safeguards as a criminal proceeding, the court will assume for purposes of screening that the applicable standard for this type of claim is the Fourteenth Amendment's due process clause.  *See Apkarian v. McAllister*, No. 17-cv-309-jdp, 2019 WL 4256826, at *3-4 (W.D. Wis. Sept. 9, 2019) (applying the Fourteenth Amendment to juvenile detainee claims because juvenile adjudications in Wisconsin are more analogous to civil commitments than criminal convictions).

### A.   Excessive Force

Under the Fourteenth Amendment, to succeed on an excessive force claim, a plaintiff must show "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015).  In determining whether

plaintiff meets this burden, relevant factors to be considered include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*.

Plaintiff has pled sufficient facts to proceed on excessive force claims against Meurier, Ungerer, Merkel, Chizek, White and Weyer. While it may be reasonable to infer that plaintiff was disobeying orders during his fight with another detainee, it likewise is reasonable to infer that these defendants went too far in the force used against the plaintiff, especially given plaintiff's assertion that he informed them that he was unable to breathe and suffered from asthma. Accordingly, the court will allow him to proceed on this claim against Meurier, Ungerer, Merkel, Chizek, White and Weyer.

### B.     Medical Care

Plaintiff also seeks to proceed on a Fourteenth Amendment claim against defendant Doe, for this defendant's failure to provide him medical care. The same standard applies to a medical care case under the Fourteenth Amendment: a state actor violates the Fourteenth Amendment if that individual's actions are "objectively unreasonable." *See Miranda v. Cnty. of Lake*, 900 F.3d 335, 352-53 (7th Cir. 2018) (applying the standard from *Kingsley* to medical care claims for detained individuals). To state a claim that a state actor violated a person's Fourteenth Amendment rights to adequate medical care, plaintiff must allege facts suggesting that (1) he suffered from an objectively serious medical condition, and (2) the state actor's response to it was objectively unreasonable. *Id*. A

showing of negligence or even gross negligence is not sufficient under the Fourteenth Amendment. *Id.*

Plaintiff's allegations involving Doe do not support a Fourteenth Amendment claim, at least as currently pled. True, plaintiff alleges that he was in pain, but he did not allege enough facts about the particular symptoms or injuries that required medical attention. More importantly, plaintiff has not alleged that he informed Doe about the nature of his injuries, or even that Doe was aware that officers had used force against him. As such, it would be unreasonable to infer that Doe's alleged failure to take more proactive steps to provide him medical care was objectively unreasonable. Therefore, the court will dismiss Doe as a defendant, but the dismissal will be without prejudice to plaintiff's ability to amend his complaint to include any omitted allegations related to the severity of his injuries and exactly what Doe knew about his injuries when they interacted. If plaintiff chooses to amend his complaint, the court will screen that pleading to determine whether plaintiff's allegations support an inference that he suffered from an objectively serious medical condition and that John Doe unreasonably denied his access to medical care.

## ORDER

IT IS ORDERED that:

1.  Plaintiff Robert Satcher is GRANTED leave to proceed on Fourteenth Amendment excessive force claims against defendants Meurier, Ungerer, Merkel, Chizek, White and Weyer.

2.  Plaintiff is DENIED leave to proceed on all other claims. Defendants Wall, Westerhaus, Ourada, Sunde and John Doe are DISMISSED. Defendant Doe is DISMISSED without prejudice.

3. Pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being sent today to the Attorney General for service on the defendants.  Under the agreement, the Department of Justice will have 60 days from the date of the Notice of Electronic Filing in this order to answer or otherwise plead to plaintiff's complaint if it accepts service for the defendants.

4. For the time being, plaintiff must send the defendants a copy of every paper or document he files with the court.  Once plaintiff has learned what lawyer will be representing the defendants, he should serve the lawyer directly rather than the defendants.  The court will disregard any documents submitted by plaintiff unless plaintiff shows on the court's copy that he has sent a copy to the defendants or to defendants' attorney.

5. Plaintiff should keep a copy of all documents for his own files.  If plaintiff does not have access to a photocopy machine, he may send out identical handwritten or typed copies of his documents.

6. If plaintiff is transferred or released from custody while this case is pending, it is his obligation to inform the court of his new address.  If he fails to do this and defendants or the court are unable to locate him, his case may be dismissed for failure to prosecute.

Entered this 9th day of September, 2021.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge